## IN THE UNITED STATES DISTRICT COURT
### for the DISTRICT OF MARYLAND

**MEDIGROW, LLC**                                          *
1300 Caraway Ct #101                                      *
Upper Marlboro, Maryland 20774                            *
Prince George's County                                   *
                                                          *
           *Plaintiff*,                                   *          **Case No: 20-504**
                                                          *
v.                                                        *
                                                          *
**NATALIE M. LAPRADE MARYLAND**                           *
**MEDICAL CANNABIS COMMISSION**                           *
849 International Drive, Fourth Floor                     *
Linthicum, Maryland 21090                                 *
Anne Arundel County                                       *
                                                          *
      *Served on:* Brian E. Frosh                         *
      Attorney General of Maryland                        *
      200 St. Paul Place                                  *
      Baltimore, Maryland 21202                           *
                                                          *
AND, in their official capacities:                        *
                                                          *
**BRIAN P. LOPEZ, Chairman**                              *
c/o Natalie M. LaPrade Maryland                           *
Medical Cannabis Commission                               *
849 International Drive, Fourth Floor                     *
Linthicum, Maryland 21090                                 *
Anne Arundel County                                       *
                                                          *
**JINLENE CHAN, M.D., M.P.H.**                            *
c/o Natalie M. LaPrade Maryland                           *
Medical Cannabis Commission                               *
849 International Drive, Fourth Floor                     *
Linthicum, Maryland 21090                                 *
Anne Arundel County                                       *
                                                          *
**EHSAN ABDESHAHIAN, M.D.**                               *
c/o Natalie M. LaPrade Maryland                           *
Medical Cannabis Commission                               *
849 International Drive, Fourth Floor                     *
Linthicum, Maryland 21090                                 *

1

Anne Arundel County                                    *
                                                       *
**NANCY ROSEN-COHEN, Ph.D.**                           *
c/o Natalie M. LaPrade Maryland                        *
Medical Cannabis Commission                            *
849 International Drive, Fourth Floor                  *
Linthicum, Maryland 21090                              *
Anne Arundel County                                    *
                                                       *
**PHILLIP COGAN, R.Ph.**                               *
c/o Natalie M. LaPrade Maryland                        *
Medical Cannabis Commission                            *
849 International Drive, Fourth Floor                  *
Linthicum, Maryland 21090                              *
Anne Arundel County                                    *
                                                       *
**KONRAD DAWSON, M.D.**                                *
c/o Natalie M. LaPrade Maryland                        *
Medical Cannabis Commission                            *
849 International Drive, Fourth Floor                  *
Linthicum, Maryland 21090                              *
Anne Arundel County                                    *
                                                       *
**MEGAN DINGUS, M.S.N.**                               *
c/o Natalie M. LaPrade Maryland                        *
Medical Cannabis Commission                            *
849 International Drive, Fourth Floor                  *
Linthicum, Maryland 21090                              *
Anne Arundel County                                    *
                                                       *
**ELIZABETH Q. HINES, M.D.**                           *
c/o Natalie M. LaPrade Maryland                        *
Medical Cannabis Commission                            *
849 International Drive, Fourth Floor                  *
Linthicum, Maryland 21090                              *
Anne Arundel County                                    *
                                                       *
**CHARLES P. LODICO, M.S., Ph.D.**                     *
c/o Natalie M. LaPrade Maryland                        *
Medical Cannabis Commission                            *
849 International Drive, Fourth Floor                  *
Linthicum, Maryland 21090                              *
Anne Arundel County                                    *

|  | * |
|---|---|
| **C. OBI ONYEWU, M.D.** | * |
| c/o Natalie M. LaPrade Maryland | * |
| Medical Cannabis Commission | * |
| 849 International Drive, Fourth Floor | * |
| Linthicum, Maryland 21090 | * |
| Anne Arundel County | * |
|  | * |
| **TIFFANY D. RANDOLPH, J.D.** | * |
| c/o Natalie M. LaPrade Maryland | * |
| Medical Cannabis Commission | * |
| 849 International Drive, Fourth Floor | * |
| Linthicum, Maryland 21090 | * |
| Anne Arundel County | * |
|  | * |
| **SAUNDRA O. WASHINGTON** | * |
| c/o Natalie M. LaPrade Maryland | * |
| Medical Cannabis Commission | * |
| 849 International Drive, Fourth Floor | * |
| Linthicum, Maryland 21090 | * |
| Anne Arundel County | * |
|  | * |
| **SCOTT WELSH** | * |
| c/o Natalie M. LaPrade Maryland | * |
| Medical Cannabis Commission | * |
| 849 International Drive, Fourth Floor | * |
| Linthicum, Maryland 21090 | * |
| Anne Arundel County | * |
|  | * |
| *Defendants.* | * |

**************************************************************************

# COMPLAINT FOR FOURTEENTH AMENDMENT EQUAL PROTECTION, RACIAL DISCRIMINATION, DECLARATORY JUDGMENT, ADMINISTRATIVE MANDAMUS, COMMON LAW MANDAMUS, <br> AND PERMANENT INJUNCTIVE RELIEF

Plaintiff MediGrow LLC, by and through undersigned counsel, files this Complaint for

Equal Protection, Declaratory Judgment, Administrative Mandamus, common law mandamus, and

Injunctive Relief against the Natalie M. LaPrade Medical Cannabis Commission (hereinafter, the

"MMCC"), and states as follows:

3

## NATURE OF THIS ACTION

This action seeks the Court's intervention in the scoring of the MMCC's applications for medical cannabis grower and processor licenses.  In 2019, the MMCC released applications that included new race-neutral and race-conscious provisions supposedly aimed at addressing the needs of minority and women applicants (the "Equity Questions").  However, a close examination of those provisions reveals that they are arbitrary, capricious, and in violation of the Fourteenth Amendment's Equal Protection Clause.  The MMCC failed to narrowly tailor these Equity Questions, allowing individuals who did not fit the definition of minority business enterprises, as defined in § 14-301 of the Maryland State Finance and Procurement Article, to capture the points intended to assist minority applicants.

Further, the MMCC violated its statutory mandate and its own regulations by accepting additional applications after the deadline, changing the delivery method of applications, and failing to give applicants enough time to respond to application deficiencies.  Not only did the MMCC allow its staff to score the Equity Questions, it failed to retain unconflicted subject matter experts to review the substantive applications, resulting in a ranking of applications that favored non-minority applicants.

Ultimately, the MMCC enacted and applied an application rubric that rewarded sham indicators of diversity over true minority participation and the health and safety of Maryland citizens.

## PARTIES

1.     Plaintiff MediGrow, LLC (hereinafter, "MediGrow"), is a Maryland limited liability company duly registered and in good standing with the Maryland Department of Assessments and Taxation with its principal office at 10009 Westphalia Road, Upper Marlboro, Maryland 20774.

2.      MediGrow is a minority business enterprise within the definition of § 14-301 of the State Finance and Procurement Article.

3.      Defendant Natalie M. LaPrade Medical Cannabis Commission (hereinafter, the "MMCC") is a statutorily established commission within the Maryland Department of Health, Md. Code Ann., Health-General § 13-3302(b), with a principal office at 849 International Drive, Fourth Floor, Linthicum, Maryland 21090.   The MMCC operates throughout the state of Maryland, issuing licenses to medical cannabis growers, processors, and dispensaries in almost every county throughout the state.

4.      The Commissioner Defendants are the thirteen (13) individuals currently appointed to serve on the Commission.   Under Health-Gen. § 13-3303, the Commission is to be composed of the Secretary of Health or a designee thereof and twelve (12) individuals appointed by the Governor.   The Commissioners are to include members of the public, licensed healthcare professionals, law enforcement representatives, attorneys, and representatives of other units of state government.   *Id.*

### Jurisdiction and Venue

5.      The events giving rise to this action occurred in Prince George's County, Maryland, and Anne Arundel County, Maryland.

6.      This action is brought pursuant to federal statutes 42 U.S.C. §§ 1981 and 1983, as well as 28 U.S.C. § 2201.

7.      This action is brought pursuant to state statutes Maryland Courts and Judicial Proceedings, §§ 3-401 et seq., especially §§3-403, 3-406, and 3-409, as well as Maryland Rule § 7-401 or, in the alternative, Maryland Rule § 7-201.

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b).

9.      Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 28 U.S.C. § 1367(a) and § 2201.

## FACTS

10.     In 2013, the General Assembly established the MMCC as an independent commission that functions within the Maryland Department of Health to study the compassionate use of medical cannabis, a form of medicine that can alleviate pain and suffering from debilitating and chronic diseases.  Health-Gen. § 13-3301 et seq. (2013).  The MMCC's province was expanded in 2014 to set policy, procedures, and regulations for a state-wide medical cannabis program.  Health-Gen. § 13-3302 (2014).  This includes licensing medical cannabis growers and processors.  Health-Gen. §§ 13-3306 and 3309 (2014).

11.     The General Assembly initially set a 15-license cap each for grower and processor licenses. However, after an outcry from the public that those licenses were awarded to mostly white-owned companies,[1] Governor Larry Hogan ordered a study of minority-based disparities in Maryland's medical cannabis industry.

12.     The resulting Disparity Study, released January 2018, found clear evidence that minority participants are disadvantaged in the medical cannabis industry.  *See* Attachment 2, Diversity Study, p. 9.

13.     On May 15, 2018, an emergency amendment to Health-Gen. § 13 was passed, requiring the MMCC to: (a) evaluate a study of the medical cannabis industry to determine whether there is a compelling interest to implement remedial measures; (b) evaluate race-neutral programs to address the needs of minority and women applicants; and (c) submit emergency regulations based

---

[1] Only 3 out of 15 grower awards and 3 out of 15 processor awards went to minority and women owned business. Only one pre-approval for a license was awarded to an African American-owned business.  *See* Attachment 1, Letter to the General Assembly, p. 2.

on the findings of the study.[2]  The total number of grower licenses increased to 22 and the total

number of processor licenses increased to 28.

14.     As a result of the emergency legislation, the MMCC planned to open a new round of grower

and processor applications to award the additional licenses in 2019.

15.     In regard to the MMCC, as amended in 2018, Maryland Code states:

> (a)(1) The Commission shall license medical cannabis growers that meet all requirements established by the Commission. . .
>
> (a)(2)(iii)(2)(iv) The Commission shall establish an application review process for granting medical cannabis grower licenses in which applications are reviewed, evaluated, and ranked based on criteria established by the Commission.
> . . .
> (a)(2)(iii)(3) The Commission shall set standards for licensure as a medical cannabis grower to ensure public safety and safe access to medical cannabis, which may include a requirement for the posting of security.
> . . .
> (a)(7) An application to operate as a medical cannabis grower may be submitted in paper or electronic form.
> . . .
> (a)(9)(i) The Commission shall:
>    1. To the extent permitted by federal and State law, actively seek to achieve racial, ethnic, gender, and geographic diversity when licensing medical cannabis growers; and
>    2. Encourage applicants who qualify as a minority business enterprise, *as defined in § 14-301 of the State Finance and Procurement Article*, or who are small, minority, or women-owned business entities to apply for licensure as medical cannabis growers.
>
> (ii) Beginning June 1, 2018, a grower licensed under this subtitle to operate as a medical cannabis grower shall report annually to the Commission on:
>    1. The number of minority and women owners of the grower;
>    2. The ownership interest of any minority and women owners of the grower; and
>    3. The number of minority and women employees of the grower.

---

[2] MMCC Diversity Regulations, found at:
<https://mmcc.maryland.gov/Documents/10.25.2018%20WT%20MMCC%20Emergency%20Regs_Website%20Posting.pdf>

Md. Code Ann., Health-Gen. § 13-3306. (Emphasis added)

16.     The General Assembly passed substantially similar statutes in regard to processor applications which included encouraging applicants who qualify as a minority business enterprise, as defined in § 14-301 of the State Finance and Procurement Article, or who are small, minority, or women-owned business entities to apply for licensure as medical cannabis processors. *See* Health-Gen. § 13-3309.

17.     Section 14-301 of the State Finance and Procurement Article referenced in the amended MMCC statute defines "minority business enterprise" as:

> any legal entity, except a joint venture, that is: (1) organized to engage in commercial transactions; (2) at least 51% owned and controlled by 1 or more individuals who are socially and economically disadvantaged; and (3) managed by, and the daily business operations of which are controlled by, one or more of the socially and economically disadvantaged individuals who own it.

Md. Code Ann., State Fin. & Proc. § 14-301.

18.     Section 14-301 further defines "socially and economically disadvantaged individual" as an individual whose personal net worth is less than $1,500,000 and who is a member of any of the following minority groups: African American, Native American, Asian, Hispanic, physically or mentally disabled, or women. *Id.*

19.     Under § 14-301, the agency in charge of certifying a minority business enterprise may certify an individual who does not meet the criteria described in paragraph 16 as socially and economically disadvantaged. *Id.*

20.     Despite the General Assembly's stated diversity and equity goals, no State agencies offered financial assistance to State-certified minority business enterprises applying for a medical cannabis grower or processor license. *See* MMCC's "Questions Received During the January 11 – February 11 Question Period" (hereinafter, "Q&A"), Attachment 3, p 49.

8

21.    On September 27, 2018, the MMCC voted and unanimously approved emergency regulations to increase diversity participation among medical cannabis business in the State.  In these regulations, the MMCC created the term "Disadvantaged Equity Applicant," meaning an applicant who:

> (a) Is a member of any of the following groups:
>    (i) African American . . .
>    (ii) American Indian / Native American . . .
>    (iii) Asian . . .
>    (iv) Hispanic . . .
>    (v) Women . . .
> (b) Meets the following requirements:
>    (i) Has a personal net worth that does not exceed $1,713,333, as adjusted annually for inflation according to the Consumer Price Index; or
>    (ii) Is a disadvantaged owner of a certified minority business enterprise as defined in State Finance and Procurement Article, § 14-301(d), Annotated Code of Maryland.

COMAR 10.62.01.01

22.    Despite referencing State Fin. & Proc. § 14-301, the MMCC's regulatory definition of Disadvantaged Equity Applicant failed to reference individuals with physical or mental disabilities.  *See* ¶ 16.

### Content of Applications

23.    Regarding the MMCC grower applications, the Code of Maryland Regulations states:

> A. The burden of proving an applicant's qualifications rests on the applicant.
>
> B. The Commission may deny an application that contains a misstatement,  omission, misrepresentation, or untruth.
>
> . . .
>
> D. The Commission may request any additional information the Commission determines is necessary to process and fully investigate an application.
>
> E. The applicant shall provide requested additional information by

> the close of business of the 14th business day after the request has
> been received by the applicant.
> . . .
> G. The Commission intends to award the licenses to the best
> applications that most efficiently and effectively ensure public
> safety and safe access to medical cannabis.

COMAR 10.62.08.05

24.    The MMCC passed substantially similar regulations regarding processor applications. *See*

COMAR 10.62.19.04.

25.    Before the emergency legislation, the MMCC's grower and processor applications each

had 15 points of the available 100 points designated for "additional factors."  The emergency

regulations re-allocated those points on both applications to new allegedly race-neutral and race-

conscious provisions aimed at addressing the needs of minority and women applicants. *See*

COMAR 10.62.08.05; COMAR 10.62.19.04.

26.    Both the growers' and processors' applications stated that diversity and equity points

would be available under three (3) questions:

a.  Q1, Diversity Plan: up to five (5) points would be available for a mix of factors including

the percent of "diversity" representation of owners, investors, managers, employees, and

other leadership roles; <u>plans</u> to use diverse employees and contractors; diversity goals,

timelines, and benchmarks; diversity recruitment goals; and any other information that

demonstrated a commitment to diversity, including community outreach;

b.  Q2, Disadvantaged Equity Applicant: up to five (5) points could be awarded based on

the percentage of minority-held ownership interest, with more points being available to

African American and Native American applicants than to Asian, Hispanic, or women

applicants, all of whom could not exceed a Personal Net Worth cap; OR the full five (5)

points could be awarded for <u>demonstrating</u> "good faith efforts" to recruit minority ownership; and

   c.   Q3, Economically Disadvantaged Applicants: five (5) points would be awarded for applicants meeting three (3) or more of the following criteria, though zero (0) points would be awarded to applicants with anything less than three (3) of the following criteria:

        i.   at least 51 percent of its ownership interest is held by one or more individuals who have lived in an economically disadvantaged area for at least 5 of the preceding 10 years;

       ii.   a majority of the employees live in an economically disadvantaged area;

     iii.   a majority of current contractors live in an economically disadvantaged area;

     iv.   at least 51 percent of its ownership interest is held by one or more individuals who are a member of a household that earns no more than 80 percent of the State median income; and

      v.   the applicant has significant past experiences in or business practices that promote economic development in economically disadvantaged areas.

*See* Attachment 4, MMCC Grower Application, p. 113; Attachment 5, MMCC Processor Application, p. 206. *See also* COMAR 10.62.08.05; 10.62.19.04.

27.    For Q1, the Diversity Plan question, no definition of "diversity" was provided in either the application or the regulations.

28.    In subsequent guidance, the MMCC stated that "[d]iverse participants include, but are not limited to individuals from diverse racial, ethnic, and cultural backgrounds and communities, small businesses, women, veterans, individuals with disabilities."  MMCC's "Guidance for the Diversity and Socioeconomic Equity Questions" (hereinafter, "Guidance"), Attachment 6, p. 282.

29.     For scoring Q1, points could be awarded to applicants who had few to no racial, ethnic, gender, or geographically diverse owners, investors, managers, and employees.  *See* Applications, Attachment 4, p. 113 and Attachment 5, p. 206.

30.     For scoring Q1 and Q3, applicants could show diversity by providing a Letter of Intent for potential future employees.  *See id.* at p. 115 and 208.

31.     For scoring Q2, the Disadvantaged Equity Applicant question, the point rubric exhibits a preference for some classes of minorities over other classes of minorities.  *See id.*

32.     Q2 focuses on minority owners of applicants but ignores State Fin. & Proc. § 14-301(f)(3)'s prescription that the business be "managed by, and the daily business operations of which are controlled by, one or more of the social and economically disadvantaged individuals who owns it."

33.     The "good faith effort" provision for Q2 only applied to applicants who had been unsuccessful in recruiting their intended threshold of minority investors or owners.  Attachment 3, Q&A, p. 69, ¶ 153.

34.     In subsequent guidance, the MMCC offered the following examples of "good faith" efforts:

> 1. Coordinating any meetings at which individuals who are African American, American Indian / Native American, Asian, Hispanic, Women, or MBE firms could be informed of the ownership opportunity.
>
> 2. Advertising in general circulation, trade association, and minority-focused media concerning the opportunities for participation.
>
> 3. Contacting minority and women business organizations and educational institutions concerning the opportunities for ownership participation.

Attachment 6, Guidance, p. 293.

35.     For scoring Q3, the Economically Disadvantaged Applicant question, the MMCC reportedly used the American Community Survey for the 2012-2016 period to determine what zip codes qualified as an Economically Disadvantaged Area.  However, the MMCC's attempt to synthesize that data was unsuccessful.  At least one zip code was missing and spotted by an applicant.  Attachment 3, Q&A, p. 57, ¶ 73.

36.     On information and belief, other zip codes that qualified as an EDA were not included in the EDA list.

37.     Further, the actual location of the grower or processor, and whether or not it was located in an economically disadvantaged area, was not considered in the application.

> [Question] Will geographic diversity be taken into consideration so that licenses will be spread across Maryland and its counties?
>
> [Response] The Commission continues to actively seek geographic diversity in the award of licenses; however, the proposed location of a grower or processor facility **will not** be considered as part of the competitive evaluation of the Application.
> . . .
> [Response] The location of a growing/processing facility is not considered as part of the competitive evaluation of an Application. Therefore, no points would be awarded for locating a facility within an Economically Disadvantaged Area (EDA).

Q&A, Attachment 3, p. 43, ¶ 9; p. 47, ¶ 21.

38.     While community outreach and promotion of economic development in economically disadvantaged areas were considered in the application, applicants were asked not to submit endorsements or recommendations from community associations and neighbors.  *Id.* at p. 6.

39.     For the first time, the MMCC established character limits for each question on the application.  *See* Q&A, Attachment 3, p. 45-46.

40.     Additionally, the MMCC vastly reduced the number of questions it asked of applicants in the 2019 application as compared to the original 2015 application cycle.  The grower applications

went from 117 questions down to 25; the processor applications were reduced from 122 questions to 21 questions.  *Id.* at p. 6.

41.    On or around March 25, 2019, the Commission made application materials available to the public.

42.    The application contained six sections with point designations: 20 points for operational factors, 20 points for safety and security factors, 15 points for horticultural and agricultural factors, 15 points for production control factors, 15 points for business and economic factors, and 15 points for diversity and equity.  *See* Applications, Attachments 4 and 5.

43.    The MMCC issued General Instructions for the growers' and processors' applications that required the evaluators and independent reviewers to use Subject Matter Experts to score the appropriate sections of the applications.  *See id.*

44.    The application for growers was substantially the same as the processor application, except for a small portion of subject matter questions for which a grower would need to provide different information than a processor.

45.    For instance, both the grower and processor applications contained a 2-point question about equipment.  Growers were asked, "Please describe how the grower Applicant will maintain equipment that comes into contact with medical cannabis to prevent contamination."  Attachment 4, p. 128.  Processors were asked, "Please describe how the processor Applicant, as part of its standard operating procedures, will provide for maintaining the sanitation of equipment that comes in contact with medical cannabis."  Attachment 5, p. 219.

## MMCC'S Application Procedure

46.     Applicants were instructed to submit grower and processor applications through a third-party online platform by 5:00 p.m. on May 24, 2019.  Three copies of the application were required, with different portions of the same application redacted for different reviewers.

47.     The MMCC stated it would only accept applications through the online platform; it would not accept physical delivery.  *See* Q&A, Attachment 3, p. 59, ¶ 86.

48.     Unfortunately, the third-party online platform for submission of application materials did not function properly.  On the application due date, the MMCC received a large number of communications from applicants who encountered significant delays and technical issues in attempting to submit their applications.

49.     Less than six (6) hours before the application deadline, the MMCC issued a notice to applicants changing the application instructions.

50.     Nevertheless, the MMCC discovered that a large number of applicants had redaction errors in their application copies.

51.     Despite these issues, MediGrow filed timely and complete applications for a grower and processor license using MMCC's online portal.

52.     MediGrow's grower application was substantially the same as its processor application, with only minor differences to respond to the subject matter questions.

53.     The MMCC acknowledged receipt of MediGrow's complete applications.

54.     Given the large number of issues with the online platform, the MMCC decided to give applicants a second opportunity to submit their applications.  Rather than request properly redacted copies from the applicants who met the initial deadline, on June 10, 2019, the MMCC re-opened the application process to any and all applicants who could meet the new in-person deadline of

June 24, 2019.  Applicants who met the initial May deadline were required to resubmit their complete applications.  New and old applicants were instructed to hand deliver their applications on USB drives.

55.     In re-opening the application period, the MMCC allowed potential applicants who had not previously submitted timely applications to file by June 24, 2019.

56.     By the June deadline, the MMCC received 109 grower applications and 104 processor applications.

57.     On information and belief, a number of applicants who had not submitted anything by the May 24 deadline submitted complete applications by the June 24 deadline.

58.     The MMCC violated its statutory mandate and its own regulations by voiding the applications properly submitted by the May 24, 2019 deadline.

59.     The MMCC violated its statutory mandate and its own regulations by allowing new applicants to submit applications by the extended deadline.

60.     The MMCC violated its statutory mandate and its own regulations by giving applicants who had attempted to submit applications by the May 24 deadline a mere 10 business days to provide the new applications, rather than the 14 business days required under its regulations.

61.     The MMCC engaged in unauthorized, unpromulgated rulemaking when it voided properly submitted applications, removed the statutorily entitled submission method of electronic submission, and failed to afford applicants who submitted their May application by the initial deadline the full 14 business days to provide materials to meet the new instructions.

62.     MediGrow complied with the MMCC's request and resubmitted its grower and processor applications in-person by June 24, 2019.

63.     MediGrow's June applications were substantially the same as its May applications.

64.     The MMCC acknowledged receipt of the MediGrow's complete applications.

## Evaluations

65.     The General Assembly authorized the MMCC to retain a third party to assist it with the

evaluation process:

> h) If the Commission retains a third party to assist the Commission
> in the evaluation or ranking of applications for licensure under this
> subtitle, the Commission may not retain the services of a person that:
>    (1) Has a direct or indirect financial, ownership, or management
> interest, including ownership of any stocks, bonds, or other similar
> financial instruments, in:
>        (i) Any State–licensed medical cannabis grower, processor, or
> dispensary; or
>        (ii) An applicant for licensure under this subtitle; or
>    (2) Has an official relationship with a person who holds a license
> under this subtitle or an applicant for licensure under this subtitle.

Health-Gen. § 13-3302.

66.     The MMCC contracted with a third party, Morgan State University, to evaluate the grower

and processor applications.

67.     There has been no transparency as to how the MMCC selected Morgan State University to

evaluate the applications.

68.     The MMCC refused to comment on the subject matter expertise of Morgan State

University:

> [Question] What does the background of your subject matter experts
> (SME) reflect this go round?  Are they being brought in from other
> states?  Do the SMEs have a stake in any of companies [sic]
> within/outside of Maryland?  And will the Application be reviewed
> in sections per SME's area of expertise?

> [Response] At this time, the Commission is unable to share
> information on who will evaluate the grower and processor
> Applications.  However, the evaluators will be prohibited from
> having a stake in any medical cannabis company in Maryland or any
> other jurisdiction.  In addition, the Application will be reviewed by
> section, pursuant to SME expertise. . .

> [Question] Will we receive a redacted biography of each SME prior to submission?
>
> [Response] No. The Commission will not release personal or biographical information on the individuals evaluating the applications.

Q&A, Attachment 3, p 11, ¶¶ 49-50.

69.     On July 16, 2019, the MMCC transmitted "redacted for evaluation" application materials to its evaluators at Morgan State University.

70.     Long after the reviews were done by Morgan State University, the MMCC released this statement about the reviewing process:

> The Commission collaborated with Morgan State University ("MSU") to evaluate the applications in a blinded review. MSU was responsible for evaluating questions worth up to 90 out of 100 points on the application, and Commission staff were responsible for evaluating questions worth up to 10 points on the application. Specifically, **Commission staff were responsible for evaluating questions relating to disadvantaged equity applicant status and economically disadvantaged areas**. Blinded application materials were randomly assigned, and two Commission staff members reviewed each application. **MSU identified faculty, staff, and administrators with expertise across all aspects of the review process.** Each reviewer was required to read and sign a confidentiality agreement and an agreement confirming his or her experience in reviewing applications according to specified evaluation criteria. Each application was assigned three (3) independent reviewers; none of the reviewers knew who other reviewers were; and all reviewers were instructed orally and in writing not to discuss their applications with anyone.

Letter to the General Assembly (emphasis added), Attachment 1, p. 5.

71.     The MMCC has not released any information about the subject matter scoring rubric used by Morgan State University.

72.     The MMCC told grower applicants that they should have education, training, and/or experience in agriculture or horticulture, as well as knowledge and experience in: various

cultivation and plant management techniques; environmental control systems; hydroponic growing systems and methodology; commercial plant cultivation including nutrient requirements, mediums, temperature control, and harvesting; and product moisture level control, curing, and packaging.  Q&A, Attachment 3, p. 49.

73.     On information and belief, no one at Morgan State University has expertise in the areas identified above.

74.     The MMCC violated its statutory mandate and its own regulations when it failed to ensure that Morgan State University had the proper subject matter experts to adequately review the applications.

75.     The MMCC acted arbitrarily, capriciously, and unreasonably when it failed to ensure that all the applications received the exact same review.

76.     On September 18, 2019, the MMCC voted to adopt the ranking of applicants prepared by the evaluators at Morgan State University.

77.     On information and belief, a member of the Morgan State University's Board of Regents is associated with one of the highest-ranking applicants from the 2019 application cycle.

78.     The MMCC violated its statutory mandate and its own regulations by engaging a conflicted third-party to evaluate the applications.

79.     The MMCC acted arbitrarily, capriciously, and unreasonably when it allowed its staff, who had unredacted copies of the application, to award 10% of the total application score for evaluating the diversity and equity points.

80.     On September 24, 2019, the Commission notified the plaintiff by e-mail that neither its grower license application nor its processor license application was among the highest scoring applications.

81.     MediGrow's grower application was not ranked high enough to receive pre-approval for a license.

82.     MediGrow's processor application was not ranked high enough to receive pre-approval for a license.

83.     The MMCC did not include any factual support for its ranking.

84.     Given that the applications asked for very similar, and frequently identical, information, a consistently applied merit-based evaluation should not have produced such a vast disparity between Plaintiff's grower application and Plaintiff's processor application.

85.     Despite the MMCC's declaration that "[a]n Applicant must score well on the Diversity Factors of the Application in order to have a reasonable chance of being awarded a license," on information and belief, the highest-ranking grower and processor applicants are not minority owned businesses.  *See* Q&A, Attachment 3, p 92, ¶ 281.

86.     The MMCC violated its legislatively mandated duty to fairly evaluate all applicants for cultivating and processing medical cannabis equally.

87.     On the evening of September 25, 2019, the Commissioners were informed that the MMCC staff had not yet completed their preliminary investigation into highly ranked applicants.  Members of the Commission subsequently decided to postpone their vote to award pre-approvals until investigation is complete.

88.     In late December 2019, Maryland lawmaker Cheryl D. Glenn was brought up on criminal charges for allegedly taking bribes in conjunction with the legislation that increased the number of grower and processor applications.

### COUNT I: 42 U.S.C. § 1983
### Violation of Equal Protection

89.     Plaintiff hereby incorporates paragraphs one (1) through 88 above.

90.     Under the Equal Protection Clause of the Fourteenth Amendment, no state may deny a person equal protection through the enactment, administration, or enforcement of its laws and regulations.

91.     The General Assembly and the MMCC, under the color of state law, enacted statutes and regulations that utilize suspect race- and gender-based classifications.  *See* Md. Code Ann., Health Gen. §§ 13-3306, 3309; *see also* COMAR 10.62.08.05; 10.62.19.04.

92.     The MMCC's regulations awarded more points to applicants who were minorities and/or women, going so far as to assign different points to different minorities.  *See id.*

93.     The General Assembly and the MMCC also enacted statues and regulations that utilize facially neutral classifications, such as zip code.  *See id.*

94.     However, the creation, administration, and/or enforcement of these statutes and regulations was intentionally discriminatory thereby resulting in the government treating two or more groups differently.

95.     The General Assembly's stated purpose, to encourage minority participation in the medical cannabis industry, is a sham.  The true intention of this regulatory scheme is to appease the general public's outcry over licenses primarily going to white business owners, while allowing non-minority applicants to collect the Equity points and thereby not disrupt the status quo.

96.     The MMCC's Equity Point scheme does not serve any compelling interest justifying disparate treatment.

97.     The MMCC's Equity Point scheme is not narrowly tailored to meet any compelling interest.

98.     The MMCC's Equity Point scheme is not substantially related to any important government interest.

99.    The MMCC's Equity Point scheme is not rationally related to any legitimate government interest.

100.    The MMCC's Equity Point scheme is arbitrary, capricious, and unreasonable as all persons similarly situated will not be treated alike.

101.    The MMCC acted with an intentionally discriminatory purpose.

102.    The MMCC acted with reckless or callous indifference to Plaintiff's right to Equal Protection.

103.    Plaintiff asserts a legal right to apply for a growers' and processors' license through a non-discriminatory process that does not violate the Fourteenth Amendment.  This right was denied by Defendants.

104.    As a direct and proximate result of the violation of its constitutional rights, Plaintiff suffered financial losses and is entitled to relief under 42 U.S.C. § 1983.

WHEREFORE, Plaintiff asks this Court to issue $500,000.00 in compensatory damages, $500,000.00 in punitive damages, costs and attorneys' fees, and any other remedy this Court finds appropriate.


### COUNT II: 42 U.S.C. § 1981
### Racial Discrimination

105.    Plaintiff hereby incorporates paragraphs one (1) through 104 above.

106.    The General Assembly and the MMCC, under the color of state law, enacted statutes and regulations that utilize racially discriminatory classifications.  *See* Md. Code Ann., Health Gen. §§ 13-3306, 3309; *see also* COMAR 10.62.08.05; 10.62.19.04.

107.    The MMCC's regulations awarded more points to applicants who were minorities and/or women, going so far as to assign different points to different minorities.  *See id.*

108.    However, the creation, administration, and/or enforcement of these statutes and regulations was intentionally discriminatory thereby resulting in the government treating two or more groups differently.

109.    The General Assembly's stated purpose, to encourage minority participation in the medical cannabis industry, is a sham.  The true intention of this regulatory scheme is to appease the general public's outcry over licenses primarily going to white business owners, while allowing non-minority applicants to collect the Equity points and thereby not disrupt the status quo.

110.    The MMCC's Equity Point scheme does not serve any compelling interest justifying disparate treatment.

111.    The MMCC's Equity Point scheme is not narrowly tailored to meet any compelling interest.

112.    The MMCC's Equity Point scheme is not substantially related to any important government interest.

113.    The MMCC's Equity Point scheme is not rationally related to any legitimate government interest.

114.    The MMCC's Equity Point scheme is arbitrary, capricious, and unreasonable as all persons similarly situated will not be treated alike.

115.    The MMCC acted with an intentionally discriminatory purpose.

116.    Plaintiff asserts a legal right to apply for a growers' and processors' license through a non-discriminatory process.  This right was denied by Defendants.

117.    As a direct and proximate result of the violation of its constitutional rights, Plaintiff suffered financial losses and is entitled to relief under 42 U.S.C. § 1981.

WHEREFORE, Plaintiff asks this Court to issue $500,000.00 in compensatory damages, $500,000.00 in punitive damages, costs and attorneys' fees, and any other remedy this Court finds appropriate.

### COUNT III: 28 U.S.C. § 2201
### Declaratory Judgment

118.    Plaintiff hereby incorporates paragraphs one (1) through 117 above.

119.    This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

120.    Plaintiff's rights are affected by the MMCC's statutes, administrative rules, and regulations.  Further, Plaintiff questions the validity of those statutes, rules, and regulations.

121.    An actual controversy exists between Plaintiff and the MMCC involving the rights and duties of the parties.

122.    Antagonistic claims are present between the parties, as described above, which indicates inevitable litigation between the parties, as evidenced by this Complaint.

123.    Plaintiff asserts a legal right to a non-arbitrary review and ranking process, as well as a nondiscriminatory scoring rubric and requests this Court order the MMCC to fulfill its statutory obligations.

124.    Plaintiff further states a right to be treated equally under the law and to be free from discrimination.

125.    This matter is appropriately before this Court as an independent basis for jurisdiction exists as Plaintiff has raised a federal question.

126.    A declaratory judgment by this Court will terminate this controversy.

127.    This Court would not abuse its discretion in issuing a declaratory judgment upon a finding that Defendants have violated 42 U.S.C. § 1981 or § 1983.

128.   Plaintiff is entitled to a judgment declaring the rights and responsibilities of the Plaintiff and Defendants, and further settling the legal relations, rights, and responsibilities of the parties.

WHEREFORE, Plaintiff requests that this Court enter a declaratory judgment in favor of Plaintiff, ordering:

(a)  that the MMCC's applications are unconstitutional;

(b)  that the MMCC's application scoring was arbitrary, capricious, and unreasonable;

(c)  and award Plaintiff such other and further relief required in the interests of justice.

## COUNT IV: MANDAMUS (COMMON LAW)
### Arbitrary and Capricious Evaluation

129.   Plaintiff hereby incorporates paragraphs one (1) through 128 above.

130.   This is an action for common law mandamus.

131.   The MMCC has a duty to review and rank applications for licenses for medical cannabis growers and processors.

132.   The MMCC acted in violation of its ministerial duties.

133.   The MMCC acted in violation of the legislature's mandate and its own regulations when it arbitrarily, capriciously, and unreasonably created a rubric for awarding application points intended to favor minority and disadvantaged applicants because the rubric easily allows for non-minority applicants to capture those points.

134.   MMCC acted in violation of the legislature's mandate and its own regulations when it arbitrarily, capriciously, and unreasonably included status as a veteran in its Diversity Plan question.

135.    MMCC acted in violation of the legislature's mandate and its own regulations when it arbitrarily, capriciously, and unreasonably included application points for Economically Disadvantaged Applicants.

136.    MMCC acted in violation of the legislature's mandate when it arbitrarily, capriciously, and unreasonably failed to ensure geographic diversity in its ranking of license applicants.

137.    MMCC acted in violation of the legislature's mandate and State Finance and Procurement § 14-301 when it arbitrarily, capriciously, and unreasonably ignored physically and mentally disabled individuals in its minority participation application questions.

138.    MMCC acted in violation of the legislature's mandate and State Finance and Procurement § 14-301 when it arbitrarily, capriciously, and unreasonably failed to examine whether minority owners also participate in daily operations in accordance with § 14-301(f)(3).

139.    MMCC acted in violation of the legislature's mandate and State Finance and Procurement § 14-301 when it arbitrarily, capriciously, and unreasonably failed to allow for minority business enterprises certified by the State certification agency to be eligible for the Disadvantaged Equity Applicant points, thereby creating a conflict between § 14-301 and its regulations.

140.    The MMCC acted in violation of the legislature's mandate and its own regulations when it arbitrarily, capriciously, and unreasonably created an application that prioritized sham indicators of diversity over the quality and safety of medical cannabis for consumers.

141.    The MMCC engaged in unpromulgated ruling and exceeded its authority in an arbitrary and capricious manner when it voided properly submitted applications and extended the application period to allow new applicants who had not submitted any application via the online platform to submit applications by the extended deadline.

142.    On information and belief, the MMCC acted arbitrarily, capriciously, and unreasonably when it accepted application(s) from an entity after the May 24, 2019 submission deadline who had not submitted any form of application before the May 24 deadline.

143.    The MMCC violated its statutory mandate and its own regulations by giving applicants who had attempted to submit applications by the May 24 deadline a mere 10 business days to provide the new applications, rather than the 14 business days required under its regulations.

144.    The MMCC acted arbitrarily, capriciously, and unreasonably when it contracted with a third-party evaluator, Morgan State University, which did not have the proper subject matter experts to properly apply the methodology.

145.    On information and belief, the MMCC acted arbitrarily, capriciously, and unreasonably when it failed to ensure that Morgan State University did not have any conflicts under Md. Code Ann., Health Gen. § 13-3302(h).

146.    The MMCC acted arbitrarily, capriciously, and unreasonably when it failed to ensure that all the medical cannabis grower and processor license applications received the exact same review.

147.    On information and belief, the MMCC acted arbitrarily, capriciously, and unreasonably by failing to ensure that any Commissioner with a conflict or conflicted relative was not part of the deliberation process.

148.    The MMCC acted arbitrarily, capriciously, and unreasonably when it allowed its staff, who had unredacted copies of the application, to award 10% of the total application score for evaluating the diversity and equity points.

149.    Plaintiff is entitled to have its application reviewed and scored by the MMCC during this application cycle in a manner that is not arbitrary, capricious, or unreasonable.

150.    Plaintiff has no adequate remedy by which they can obtain relief but by action of this Court.

WHEREFORE, Plaintiff asks this Court to issue a Writ of Mandamus ordering:

(a) MMCC's grower and processor rankings posted on its website on September 26, 2019, be voided;

(b) MMCC to fulfill its statutory duty to review all grower and processor license applications in a manner that is not arbitrary, capricious, or unreasonable; or, in the alternative,

(c) order MMCC to award Plaintiff a Stage One Pre-Approval.

### COUNT V: ADMINISTRATIVE MANDAMUS, Md. Rule § 7-401
### Arbitrary and Capricious Evaluation

151.    Plaintiff hereby incorporates paragraphs one (1) through 150 above.

152.    This is an action for mandamus under Maryland Rule § 7-401.

153.    The MMCC has a duty to review and rank applications for licenses for medical cannabis growers and processors.

154.    The MMCC's review and ranking of license applications was a fact-based, quasi-judicial action.

155.    The MMCC acted in violation of the legislature's mandate and its own regulations when it arbitrarily, capriciously, and unreasonably created a rubric for awarding application points intended to favor minority and disadvantaged applicants because the rubric easily allows for non-minority applicants to capture those points.

156.    MMCC acted in violation of the legislature's mandate and its own regulations when it arbitrarily, capriciously, and unreasonably included status as a veteran in its Diversity Plan question.

157.    MMCC acted in violation of the legislature's mandate and its own regulations when it arbitrarily, capriciously, and unreasonably included application points for Economically Disadvantaged Applicants.

158.    MMCC acted in violation of the legislature's mandate when it arbitrarily, capriciously, and unreasonably failed to ensure geographic diversity in its ranking of license applicants.

159.    MMCC acted in violation of the legislature's mandate and State Finance and Procurement § 14-301 when it arbitrarily, capriciously, and unreasonably ignored physically and mentally disabled individuals in its minority participation application questions.

160.    MMCC acted in violation of the legislature's mandate and State Finance and Procurement § 14-301 when it arbitrarily, capriciously, and unreasonably failed to examine whether minority owners also participate in daily operations in accordance with § 14-301(f)(3).

161.    MMCC acted in violation of the legislature's mandate and State Finance and Procurement § 14-301 when it arbitrarily, capriciously, and unreasonably failed to allow for minority business enterprises certified by the State certification agency to be eligible for the Disadvantaged Equity Applicant points, thereby creating a conflict between § 14-301 and its regulations.

162.    The MMCC acted in violation of the legislature's mandate and its own regulations when it arbitrarily, capriciously, and unreasonably created an application that prioritized sham indicators of diversity over the quality and safety of medical cannabis for consumers.

163.    The MMCC engaged in unpromulgated ruling and exceeded its authority in an arbitrary and capricious manner when it voided properly submitted applications and extended the application period to allow new applicants who had not submitted any application via the online platform to submit applications by the extended deadline.

164.    On information and belief, the MMCC acted arbitrarily, capriciously, and unreasonably when it accepted application(s) from an entity after the May 24, 2019 submission deadline who had not submitted any form of application before the May 24 deadline.

165.    The MMCC violated its statutory mandate and its own regulations by giving applicants who had attempted to submit applications by the May 24 deadline a mere 10 business days to provide the new applications, rather than the 14 business days required under its regulations.

166.    The MMCC acted arbitrarily, capriciously, and unreasonably when it contracted with a third-party evaluator, Morgan State University, which did not have the proper subject matter experts to properly apply the methodology.

167.    On information and belief, the MMCC acted arbitrarily, capriciously, and unreasonably when it failed to ensure that Morgan State University did not have any conflicts under Md. Code Ann., Health Gen. § 13-3302(h).

168.    The MMCC acted arbitrarily, capriciously, and unreasonably when it failed to ensure that all the medical cannabis grower and processor license applications received the exact same review.

169.    On information and belief, the MMCC acted arbitrarily, capriciously, and unreasonably by failing to ensure that any Commissioner with a conflict or conflicted relative was not part of the deliberation process.

170.    The MMCC acted arbitrarily, capriciously, and unreasonably when it allowed its staff, who had unredacted copies of the application, to award 10% of the total application score for evaluating the diversity and equity points.

171.    Plaintiff is entitled to have its application reviewed and scored by the MMCC during this application cycle in a manner that is not arbitrary, capricious, or unreasonable.

172.    Plaintiff has no adequate remedy by which they can obtain relief but by action of this Court.

        WHEREFORE, Plaintiff asks this Court to issue a Writ of Mandamus ordering:

        (a) MMCC's grower and processor rankings posted on its website on September 26, 2019, be voided;

(b) MMCC to fulfill its statutory duty to review all grower and processor license applications in a manner that is not arbitrary, capricious, or unreasonable; or, in the alternative,

(c) order MMCC to award Plaintiff a Stage One Pre-Approval.

## COUNT VI: MANDAMUS, Md. Rule § 7-201
## Arbitrary and Capricious Evaluation Process

173.    Plaintiff hereby incorporates paragraphs one (1) through 172 above.

174.    In the alternative, this is an action for mandamus under Maryland Rule § 7-201.

175.    The MMCC has a duty to review and rank applications for licenses for medical cannabis growers and processors.

176.    The MMCC acted in violation of the legislature's mandate and its own regulations when it arbitrarily, capriciously, and unreasonably created a rubric for awarding application points intended to favor minority and disadvantaged applicants because the rubric easily allows for non-minority applicants to capture those points.

177.    MMCC acted in violation of the legislature's mandate and its own regulations when it arbitrarily, capriciously, and unreasonably included status as a veteran in its Diversity Plan question.

178.    MMCC acted in violation of the legislature's mandate and its own regulations when it arbitrarily, capriciously, and unreasonably included application points for Economically Disadvantaged Applicants.

179.    MMCC acted in violation of the legislature's mandate when it arbitrarily, capriciously, and unreasonably failed to ensure geographic diversity in its ranking of license applicants.

180.    MMCC acted in violation of the legislature's mandate and State Finance and Procurement § 14-301 when it arbitrarily, capriciously, and unreasonably ignored physically and mentally disabled individuals in its minority participation application questions.

181.    MMCC acted in violation of the legislature's mandate and State Finance and Procurement § 14-301 when it arbitrarily, capriciously, and unreasonably failed to examine whether minority owners also participate in daily operations in accordance with § 14-301(f)(3).

182.    MMCC acted in violation of the legislature's mandate and State Finance and Procurement § 14-301 when it arbitrarily, capriciously, and unreasonably failed to allow for minority business enterprises certified by the State certification agency to be eligible for the Disadvantaged Equity Applicant points, thereby creating a conflict between § 14-301 and its regulations.

183.    The MMCC acted in violation of the legislature's mandate and its own regulations when it arbitrarily, capriciously, and unreasonably created an application that prioritized sham indicators of diversity over the quality and safety of medical cannabis for consumers.

184.    The MMCC engaged in unpromulgated ruling and exceeded its authority in an arbitrary and capricious manner when it voided properly submitted applications and extended the application period to allow new applicants who had not submitted any application via the online platform to submit applications by the extended deadline.

185.    On information and belief, the MMCC acted arbitrarily, capriciously, and unreasonably when it accepted application(s) from an entity after the May 24, 2019 submission deadline who had not submitted any form of application before the May 24 deadline.

186.    The MMCC violated its statutory mandate and its own regulations by giving applicants who had attempted to submit applications by the May 24 deadline a mere 10 business days to provide the new applications, rather than the 14 business days required under its regulations.

187.    The MMCC acted arbitrarily, capriciously, and unreasonably when it contracted with a third-party evaluator, Morgan State University, which did not have the proper subject matter experts to properly apply the methodology.

188.    On information and belief, the MMCC acted arbitrarily, capriciously, and unreasonably when it failed to ensure that Morgan State University did not have any conflicts under Md. Code Ann., Health Gen. § 13-3302(h).

189.    The MMCC acted arbitrarily, capriciously, and unreasonably when it failed to ensure that all the medical cannabis grower and processor license applications received the exact same review.

190.    On information and belief, the MMCC acted arbitrarily, capriciously, and unreasonably by failing to ensure that any Commissioner with a conflict or conflicted relative was not part of the deliberation process.

191.    The MMCC acted arbitrarily, capriciously, and unreasonably when it allowed its staff, who had unredacted copies of the application, to award 10% of the total application score for evaluating the diversity and equity points.

192.    Plaintiff is entitled to have its application reviewed and scored by the MMCC during this application cycle in a manner that is not arbitrary, capricious, or unreasonable.

193.    Plaintiff has no adequate remedy by which they can obtain relief but by action of this Court.

WHEREFORE, Plaintiff asks this Court to issue a Writ of Mandamus ordering:

(a) MMCC's grower and processor rankings posted on its website on September 26, 2019, be voided;

(b) MMCC to fulfill its statutory duty to review all grower and processor license applications in a manner that is not arbitrary, capricious, or unreasonable; or, in the alternative,

(c) order MMCC to award Plaintiff a Stage One Pre-Approval.

### COUNT VII: Cts. & Jud. Pro, § 3-401 et seq.
### DECLARATORY JUDGMENT

194.    Plaintiff hereby incorporates paragraphs one (1) through 193 above.

195.    This is an action for declaratory judgment pursuant to the Courts and Judicial Proceedings Article of the Annotated Code of Maryland, §§ 3-401 et seq.

196.    Plaintiff's rights are affected by the MMCC's statutes, administrative rules, and regulations.  Further, Plaintiff questions the validity of those statutes, rules, and regulations.

197.    An actual controversy exists between Plaintiff and the MMCC involving the rights and duties of the parties.

198.    Antagonistic claims are present between the parties, as described above, which indicates inevitable litigation between the parties, as evidenced by this Complaint.

199.    Plaintiff asserts a legal right to a non-arbitrary review and ranking process, as well as a nondiscriminatory scoring rubric and requests this Court order the MMCC to fulfill its statutory obligations.

200.    Plaintiff further states a right to be treated equally under the law and to be free from discrimination.

201.    A declaratory judgment by this Court will terminate this controversy.

202.    Plaintiff is entitled to a judgment declaring the rights and responsibilities of the Plaintiff and Defendants, and further settling the legal relations, rights, and responsibilities of the parties.

WHEREFORE, Plaintiff requests that this Court enter a declaratory judgment in favor of Plaintiff, ordering:

(d) that the MMCC's applications are unconstitutional;

(e) that the MMCC's application scoring was arbitrary, capricious, and unreasonable;

(f)   and award Plaintiff such other and further relief required in the interests of justice.

## COUNT VIII: INJUNCTION

203.    Plaintiff hereby incorporates paragraphs one (1) through 202 above.

204.    If the Commission's unlawful actions stand, Plaintiff will be deprived of substantial rights and privileges.  Plaintiff estimates these grower and processor licenses will be worth millions of dollars.  Absent an injunction, Plaintiff will lose the ability to grow and process medical cannabis. If the MMCC awards its limited pre-approval licenses on the current ranking, the MMCC cannot legally issue another license due to the statutory limit on the number of licenses.  Under the current laws, there will not be another opportunity to apply for a license.

205.    Plaintiff has suffered harm from the MMCC's actions as it has exhausted its pre-license funding.

206.    The harm to Plaintiff substantially outweighs potential harm to the Defendants.  Defendants are not market participants and thus have no economic stake in the outcome of the licensing process.

207.    Plaintiff will suffer irreparable injury if the MMCC is not enjoined from granting its limited pre-approval licenses before properly evaluating and scoring the current pool of applicants.

208.    This harm is imminent, as the MMCC is expected to announce pre-license awards in the near future.

209.    Granting the injunction is in the public interest.  Medical cannabis is a highly demanded alternative medication with the potential to alleviate pain from debilitating and chronic diseases. Ensuring that those companies who are best suited to provide this medical service, consistent with the aims of the General Assembly, will positively impact qualified patients.

210.    The public interest is also served by correcting a flawed administrative process. Holding the Commission accountable to fulfill its statutory responsibilities, exercise good judgment, not act in an arbitrary, capricious, unreasonable, or illegal manner, and engage in reasoned decision making will ensure effective oversight of the industry.

211.    Plaintiff has a substantial likelihood of success on the merits.

212.    Plaintiff therefore requests an injunction prohibiting Defendants from announcing the awards of pre-approval licenses for any of the limited grower or producer licenses or taking any other steps under Stage 2 of the MMCC's licensing scheme, until such time as they have fairly scored all eligible applicants.

213.    Plaintiff requests a full adversarial hearing such that this Court may be able to rule on a preliminary and/or permanent injunction.

   WHEREFORE, Plaintiff requests this Court enter the requested injunction upon a proper motion.

Date: February 25, 2020                    RESPECTFULLY SUBMITTED,


_____
Kelly Burchell (Bar#: 18566)
Theresa Taing (Bar#: 20583)
1900 M Street, NW, Suite 600
Washington, DC 20036
Main: (202) 505-3896 Fax: (202) 315-3807
Kelly@BurchellHughes.com
Theresa@BurchellHughes.com
*Counsel for the Plaintiff*