IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MEDIGROW, LLC, | * |
| Plaintiff, | * |
| v. | * |
| | Civil Action No. RDB-20-0504 |
| NATALIE M. LAPRADE MEDICAL CANNABIS COMMISSION, *et al.*, | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

The Federal Controlled Substances Act ("CSA"), 21 U.S.C. § 801, *et seq.*, prohibits the possession and distribution of marijuana, which is defined to include "all parts of the plant Cannabis sativa L." 21 U.S.C. § 802(16). Notwithstanding the illegality of marijuana under federal law, Maryland and several other states have recently permitted the possession and distribution of cannabis for medical purposes.[1] In 2013, the Maryland General Assembly established the Natalie M. LaPrade Medical Cannabis Commission (the "Commission") as an independent commission within the Maryland Department of Health to study the use of medical cannabis. Md. Code Ann., Health-Gen. § 13-3301, *et seq.* (2013). Ultimately, the

---

[1] *See* John Vigorito, *Creating Constitutional Cannabis: An Individual State's Tenth Amendment Right to Legalize Marijuana*, 46 U. TOL. L. REV. 221 (2014). Although the states have exercised their authority to permit the possession and distribution of medical cannabis, the Controlled Substances Act "contains no exception—express or implied—for medically-prescribed marijuana." *United States v. Bey*, 341 F. Supp. 3d 528 (E.D. Pa. 2018). This tension between state and federal law has been addressed by congressional action which prohibits the Department of Justice from expending funds in a manner that would interfere with state medical cannabis laws. *United States v. Evans,* 929 F.3d 1073, 1076 (9th Cir. 2019). Additionally, the Department of Justice "has declined to enforce [the CSA] when a person or company buys or sells marijuana in accordance with state law." *Green Solution Retail, Inc. v. United States*, 855 F.3d 1111, 1114 (10th Cir. 2017).

Commission was tasked with issuing licenses for medical cannabis growers and processors. Health-Gen §§ 13-3306 and 3309.

In conformity with the Maryland General Assembly's legislative efforts to promote diversity in the Maryland cannabis industry, the Commission established a race and gender-conscious application process for medical cannabis grower and processor licenses. In this lawsuit, Plaintiff MediGrow, LLC ("Plaintiff" or "MediGrow"), has filed an eight-count Complaint alleging federal claims in the first three counts and state law claims in the remaining five counts. Specifically, MediGrow alleges that the Commission's application process unfairly rewards non-minority applicants in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Furthermore, Plaintiff alleges violations of Maryland common law and administrative law. MediGrow files suit against the Commission and all of its members in their official capacities (collectively, the "Defendants").[2]

Now pending is the Defendants' Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 21). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). As set forth below, the Eleventh Amendment to the U.S. Constitution bars suit in federal court against state agencies and state officials acting in their official capacity. The Defendants in this case are therefore shielded from Plaintiff's federal claims. Alternatively, MediGrow lacks standing to bring those claims. Pursuant to 28 U.S.C. § 1367(c), this Court declines to exercise supplemental jurisdiction over the remaining state

---

[2] The Commission members sued in their official capacities are Brian P. Lopez, Chairman; Jinlene Chan, M.D., M.P.H.; Ehsan Abdeshahian, M.D.; Nancy Rosen-Cohen, Ph.D.; Phillip Cogan, R.Ph.; Konrad Dawson, M.D.; Megan Dingus, M.S.N.; Elizabeth Q. Hines, M.D.; Charles P. Lodico, M.S., Ph.D.; C. Obi Onyewu, M.D.; Tiffany D. Randolph, J.D.; Saundra O. Washington; and Scott Welsh.

law claims, both as a matter of discretion and because federal abstention principles require this Court to refrain from disrupting Maryland's medical cannabis regulatory scheme. Ultimately, this court must avoid settling Maryland law disputes concerning the distribution of cannabis for medicinal purposes, as federal law prohibits the possession and distribution of this substance. *See* 21 U.S.C. § 801, *et seq.* For these reasons, and for the reasons set forth below, Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 21) is GRANTED. Plaintiff's Complaint is DISMISSED in its entirety. Counts I, II, and III are DISMISSED WITH PREJUDICE because Plaintiff cannot overcome the Defendants' Eleventh Amendment immunity. The remaining Counts (Counts IV, V, VI, VII, and VIII) are DISMISSED WITHOUT PREJUDICE.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). In 2013, the Maryland General Assembly established the Natalie M. LaPrade Medical Cannabis Commission as an independent commission within the Maryland Department of Health to study the use of medical cannabis. (Compl. ¶ 10, ECF No. 1.) Md. Code Ann., Health-Gen. § 13-3301, *et seq.* (2013). In 2014, the General Assembly expanded the Commission's purview by permitting it to set policies, procedures, and regulations for a state-wide medical cannabis program. Health-Gen. § 13-3302 (2014). The Commission's statutory duties include awarding licenses to medical cannabis growers and processors. Health-Gen. §§ 13-3306 and 3309.

On May 15, 2018, the General Assembly passed an emergency amendment to Health-Gen. § 13-3301, *et seq.*, designed to ameliorate inequality in the medical cannabis industry. Under the amended statutes, the Commission was directed to "seek to achieve racial, ethnic, gender, and geographic diversity when licensing" medical cannabis growers and processors and to "encourage . . . minority business enterprise[s] . . . to apply for licenses" as medical cannabis growers and processors.  Health-Gen. § 13-3306, 13-3309.

Pursuant to the General Assembly's statutory mandate, the Commission instituted a gender and race-conscious grower and processor license application process.  (ECF No. 1 ¶ 25); COMAR 10.62.08.05; COMAR 10.62.19.04.  Under this process, the Commission conducts a preliminary review of the applications for purposes of awarding pre-approval licenses. (ECF No. 1 ¶¶ 25, 42; ECF No. 1-17 at 114, 207.)  Applicants are ranked based on a 100-point system that is designed to account for several weighted criteria, such as "Operational Factors," "Safety and Security Factors," and the like.  (*Id.*)  Of the 100 points available for allocation, 15 points may be awarded based on "Diversity & Social and Economic Equity Factors" (the "equity points").  Applicants for grower and processor licenses could, at least theoretically, receive equity points even if they had few "racial, ethnic, gender, or geographically diverse owners, investors, managers, and employees." (ECF No. 1 ¶ 29.)  For example, applicants could acquire equity points by demonstrating "minimal efforts to promote diversity" even if they had "[n]o diverse owners, investors, and managers" and only "some diverse employees."  (ECF No. 1-17 at 116, 209-210.)

MediGrow, a Maryland LLC and alleged minority business,[3] submitted timely grower

---

[3] MediGrow alleges that it is a minority business within the definition of Md. Code Ann., State Fin. &

4

and processer applications via the Commission's online platform and, as subsequently required, by hand. (ECF No. 1 ¶¶ 46-62.) On September 24, 2019, the Commission notified MediGrow by email that neither its grower license application nor its processor license application was among the highest scoring applications. (*Id.* ¶ 80.) Accordingly, neither application qualified to receive pre-approval for a license. (*Id.* ¶¶ 81-82.) Plaintiff alleges that the highest-ranking grower and processor applicants are not minority owned businesses. (*Id.* ¶ 85.) The Commission has not yet awarded pre-approvals to any 2019 applicant. (*Id.* ¶ 87.)

On February 25, 2020, MediGrow initiated this lawsuit by filing an eight-count Complaint, alleging violations of the Equal Protection Clause of the Fourteenth Amendment and Maryland law. Counts I and II bring equal protection and race discrimination claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1981, respectively. Counts III seeks a declaratory judgment pursuant to 28 U.S.C. § 2201. The remaining Counts (Counts IV-VIII) bring various state law claims. On June 11, 2020, Defendants moved to dismiss Plaintiff's Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), 28 U.S.C. § 1367(c), and federal abstention principles.

## STANDARD OF REVIEW

### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Defendants assert a facial challenge to this Court's subject matter jurisdiction, arguing that the allegations of the complaint establish their immunity to suit under the Eleventh Amendment to the United States Constitution. *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*,

---

Proc. § 14-301. It does not provide any details about the demographic composition of its ownership or employees.

5

888 F.3d 640, 649 (4th Cir. 2018) (holding that sovereign immunity deprives the court of subject matter jurisdiction). A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F.Supp.2d 792, 799 (D. Md. 2005). A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). The Defendants in this case clearly present a facial challenge and accordingly "must show that [the] complaint fails to allege facts upon which subject matter can be predicated." *Amador v. Mnuchin*, ELH-20-1102, 2020 WL 4547950, at *5 (D. Md. Aug. 5, 2020) (quoting *Hutton v. Nat'l Bd. of Exam'rs Inc.*, 892 F.3d 613, 620-21 (4th Cir. 2018)).

**II.     Motion to Dismiss for Failure to State a Claim.**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). While a complaint need not include "detailed factual allegations," it must set forth "enough factual matter [taken as true] to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts

is improbable and . . . recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff cannot rely on bald accusations or mere speculation. *Twombly*, 550 U.S. at 555.

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV*, LLC, 846 F.3d 757, 765 (4th Cir. 2017). A court, however, is not required to accept legal conclusions drawn from those facts. *Iqbal*, 556 U.S. at 678. "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## ANALYSIS

MediGrow generally alleges that the Commission's medical cannabis licensing application process does not adequately protect the interest of minority businesses. In its facial challenge to the regulations governing the application process, MediGrow alleges that the Commission made a "sham" effort to promote diversity in the medical cannabis industry, while nevertheless continuing to favor non-minority applicants. (*See, e.g.*, ECF No. 1 ¶ 109.) MediGrow brings claims under federal and state law. Defendants first move to dismiss the federal claims on sovereign immunity and standing grounds, then urge this Court to abstain from exercising supplemental jurisdiction over the state claims.

Defendants' motion is GRANTED. Plaintiff's federal claims asserted in Counts I and II must be dismissed based on Eleventh Amendment sovereign immunity. Additionally, the Complaint does not allege a plausible basis for MediGrow's standing to bring those claims. Count III, the declaratory judgment claim, fails because the Complaint does not establish the existence of an "actual controversy" that warrants jurisdiction in federal court. Having dismissed all of the federal claims, this Court declines to exercise supplemental jurisdiction over the remaining state law claims both pursuant to the discretion afforded by 28 U.S.C. § 1367(c) and as a result of federal abstention principles.

## I. Counts I and II

In Count I, MediGrow brings a claim under 42 U.S.C. § 1983, alleging that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by administering a discriminatory application process. In Count II, MediGrow brings essentially the same claim under 42 U.S.C. § 1981, alleging racial discrimination in the process. Defendants move to dismiss these claims, arguing that they are entitled to Eleventh Amendment sovereign immunity and that Plaintiff lacks standing. Those arguments are addressed in turn.

### A. Defendants are entitled to Eleventh Amendment sovereign immunity.

Defendants argue that sovereign immunity shields them from Counts I and II because MediGrow seeks retrospective, monetary relief from the State of Maryland in federal court. While acknowledging that the Eleventh Amendment generally prohibits such actions, MediGrow argues that Counts I and II may proceed under two recognized exceptions to sovereign immunity, which permit actions against the state in federal court when the state has waived its immunity and consented to suit or where the plaintiff seeks prospective, injunctive

8

relief against state officials. Specifically, Plaintiff argues that its claims may proceed because (1) Maryland has waived its immunity to torts in federal court pursuant to the Maryland Tort Claims Act, Md. Code Ann., State Gov't § 12-101, *et seq.* and (2) because it seeks prospective relief in the form of a declaratory judgment (Count III), an injunction (Count VIII), and "any other remedy this Court finds appropriate" (Counts I and II).

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Eleventh Amendment immunizes states, state agencies, state instrumentalities, and state officials sued in their official capacities from suit by private parties in federal court." *Windsor v. Bd. of Educ. of Prince George's Cty.*, TDC-14-2287, 2016 WL 4939294, at *10 (D. Md. Sept. 13, 2016). *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Bland v. Roberts*, 730 F.3d 368, 389-91 (4th Cir. 2013).

Eleventh Amendment sovereign immunity is not absolute. The state may waive its sovereign immunity and consent to suit in federal court. Additionally, pursuant to an exception established by the Supreme Court in *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908), private citizens may "petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute." *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002). Under the *Ex Parte Young* exception, private litigants may sue state officials for injunctive relief or seek a declaratory judgment, so long as the relief sought is prospective in nature and remedies an ongoing harm. *See Just Puppies, Inc. v. Frosh*, 438 F. Supp. 3d 448, 483-84 (D. Md. Feb. 7, 2020) (citing *Verizon*

9

*Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S. Ct. 1753 (2002). Ultimately, it is the Defendants' burden to demonstrate that they are entitled to sovereign immunity because it is "akin to an affirmative defense." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).

In Counts I and II, MediGrow sues an instrumentality of the State of Maryland (the Commission) and several state officials in their official capacities (the Commission members) for monetary relief. Those claims are barred by sovereign immunity, and neither the waiver nor the *Ex Parte Young* exceptions apply. First, Maryland has not waived its sovereign immunity in federal court. As this Court has previously noted, while the Maryland Tort Claims Act, Md. Code Ann., State Gov't § 12-101, *et seq.*, effectuates a limited waiver of sovereign immunity to actions brought in state court, it "has no effect on the immunity afforded by the Eleventh Amendment for suits in federal courts." *Taylor v. Somerset Cty. Comm'rs*, RDB-16-0336, 2016 WL 3906641, at *5 (D. Md. July 19, 2016).

Second, Plaintiff's pursuit of declaratory relief (in Count III), an injunction (in Count VIII) and "any other remedy this Court finds appropriate" (in Counts I and II), do not trigger the *Ex Parte Young* exception. In Counts I and II, Plaintiffs allege that the Commission—not the Commissioners—have engaged in wrongdoing. (*See, e.g.*, ECF No. 1 ¶¶ 101, 115 ("[The Commission] acted with an intentionally discriminatory purpose.") The requested declaratory judgment only seeks relief against the Commission. (ECF No. 1 at 25 (seeking a declaratory judgment stating that "[the Commission's] applications are unconstitutional.") The *Ex Parte Young* exception only permits actions against state officials, not the State itself or its instrumentalities. As the Plaintiff seeks relief to remedy alleged constitutional violations of the Commission, and not its members, the *Ex Parte Young* exception does not apply.

Even if the Complaint could be construed otherwise, so as to allege that the individual Commissioners committed constitutional violations and to seek remedies against those officials, it would not fit the *Ex Parte Young* exception. The declaratory relief sought in Count III is not prospective in nature, as *Ex Parte Young* requires. As the United States Court of Appeals for the Fourth Circuit has explained, "[N]o federal court may issue a declaratory judgment on past state action, where the action complained of is past and no other relief [i.e., injunctive relief] is available." *Int'l Coal. for Religious Freedom v. Maryland*, 3 F. App'x 46 (4th Cir. 2001) (citing *Green v. Mansour*, 474 U.S. 64, 71-74, 106 S. Ct. 423 (1982)). Count III seeks a declaration that the Commission "acted with a discriminatory purpose" when it designed the license applications and scored them; it does not seek to right an ongoing wrong. The requested declaratory relief is therefore retrospective in nature, as it will only declare that a past action violated the constitution. Accordingly, the declaratory judgment in Count III does not permit application of the *Ex Parte Young* exception.

The injunction sought in Count VIII does not save Counts I and II, either, because the requested injunction does not relate to the federal law claims identified in Counts I and II. Count VIII complains of a "flawed administrative process" and seeks to hold the "Commission accountable to fulfill its statutory responsibilities." (*Id.* ¶ 210.) As such, Count VIII requests an injunction prohibiting state law violations. This form of injunctive relief is not tailored to any purported constitutional violation and therefore cannot salvage Counts I and II from the Defendants' claim of sovereign immunity. Finally, as Plaintiff has sought specific forms of injunctive and declaratory relief in Counts III and VIII, this Court cannot re-write its plea for "any other remedy" (presented in Counts I and II) as requesting some

11

other form of prospective relief permissible under *Ex Parte Young*. Accordingly, Counts I and II are DISMISSED WITH PREJUDICE on sovereign immunity grounds.

### B. The Complaint does not allege a plausible basis for Plaintiff's standing.

Apart from the defense of sovereign immunity, Defendants also contend that MediGrow does not have standing to bring Counts I and II. Specifically, Defendants argue that Counts I and II do not identify a concrete "injury in fact," as is required for Article III standing. Defendants characterize Counts I and II as "scattershot attacks on the general idea of the Commission's regulations . . . without ever pleading that the Commission's regulations applied to cause some harm to Plaintiff." (ECF No. 21-1 at 21.) Plaintiff responds that its alleged "inability to compete for a grower and or processor license on an equal footing" suffices for Article III purposes. (ECF No. 22-1 at 16.) Specifically, Plaintiff complains that the license application process permits the allocation of equity points to businesses which do not have many minority members, thereby permitting the Commission to quell public concerns about discrimination while maintaining the status quo. (ECF No. 1 ¶¶ 26-38, 95, 109; ECF No. 22-1 at 16-17.)

"Standing is an 'essential and unchanging part' of Article III's case or controversy requirement." James M. Wagstaffe, Federal Civil Procedure Before Trial § 24-III (2019) (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771, 120 S. Ct. 1858, 146 L.Ed.2d 836 (2000)). To establish Article III standing, a plaintiff must (1) show an injury in fact, (2) demonstrate a causal connection between the defendants' actions and the alleged injury, and (3) show that the injury will likely be redressed by a favorable outcome. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). An injury

in fact must be "concrete, particularized, and actual or imminent." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149, 130 S. Ct. 2743, 177 L.Ed.2d 461 (2010). Where a government program awards benefits in a gender or race-conscious manner, an aggrieved individual satisfies the injury in fact requirement by alleging "the inability to compete [with other applicants] on an equal footing." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993).

In this case, the Complaint fails to allege that MediGrow was unable to compete for grower and processor licenses "on an equal footing" with other applicants. The mere fact that equity points may, at least in theory, be awarded to businesses with few minority members does not support the conclusion that the entire process places minority businesses, or even MediGrow specifically, on an unequal footing. Plaintiff does not allege that it was treated unfavorably in the application process, or that it did not receive the full number of equity points to which it was entitled, or even that "non-minority" businesses received an undue amount of equity points. In fact, the Complaint contains no information whatsoever concerning the number of equity points it received or should have received. Instead, the Complaint launches a general challenge to the equity points system without explaining how that system produces discriminatory results. Plaintiff may disagree with the precise manner in which equity points are allocated, but that disagreement does not indicate that it has been placed on unequal footing in the application process. Without providing sufficient factual content to support that conclusion, MediGrow has failed to allege a plausible basis for standing. Accordingly, Counts I and II may be DISMISSED for failure to allege standing, even if there was no Eleventh Amendment sovereign immunity.

## II. Count III.

In Count III, MediGrow seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Specifically, as to its federal claims, MediGrow requests a declaration that the Commission's "applications are unconstitutional." (ECF No. 1 at 25.) Defendant seeks dismissal of this Count, arguing that Plaintiff has not satisfied the Declaratory Judgment Act's "actual controversy" requirement.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. To take jurisdiction over a declaratory judgment proceeding, the district court must ensure that three "essentials" are present:

> (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment;" (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (citations omitted). For an actual controversy to exist, a plaintiff must present a dispute that is "real and substantial" and "definite and concrete, touching the legal relations of parties having adverse legal interests." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764 (2007) (citation omitted).

In this case, the Complaint brings only a general challenge to the Commission's application procedures and fails to allege the existence of a "definite and concrete" dispute. Additionally, having determined that MediGrow's federal claims must be dismissed, there is

14

no longer an independent basis for this Court to assert jurisdiction over this matter. Accordingly, Count III is DISMISSED WITH PREJUDICE.

### III.  Counts IV, V, VI, VII, and VIII.

In Counts IV through VIII, Plaintiff asserts a variety of state law claims concerning the Commission's licensing regulations. Defendants argue that, having dismissed the federal claims, this Court should to decline to exercise supplemental jurisdiction over the state law claims. Alternatively, they argue that dismissal is warranted under abstention principles. Defendants are correct on both accounts.

Pursuant to 28 U.S.C. § 1367, a federal court may exercise supplemental jurisdiction over claims that otherwise would not be within federal jurisdiction. Under 28 U.S.C. § 1367(c)(3), a federal court has the discretion to decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. *Hilliard v. Kaiser Found. Health Plan of the Mid–Atlantic States*, 169 F. Supp. 2d 416, 418–19 (D. Md. 2001). The Supreme Court has cautioned against the use of supplemental jurisdiction and suggested that in cases where the federal claims are dismissed before trial, "the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966); *see also Walker v. City of Salisbury*, 170 F. Supp. 2d 541, 552 (D. Md. 2001) (declining to exercise pendent jurisdiction over plaintiffs' remaining state law claims when the court granted defendants' motion to dismiss all of plaintiffs' federal claims against the defendant).

Having dismissed the federal claims set forth in Counts I, II, and III with prejudice, this Court exercises its discretion to dismiss the pending state law claims. Dismissal is especially warranted here because the state law claims concern the intricacies of a new state

15

regulatory scheme. Principles of comity dictate that the Plaintiff's novel state law claims should be reserved to the Maryland courts. Additionally, as further discussed below, it would not be appropriate for this federal court to wade into the murky regulatory world of medical cannabis distribution as marijuana remains prohibited under federal law.

Federal abstention principles also counsel against exercising jurisdiction over Plaintiff's state claims. Under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S. Ct. 1098 (1943), a federal district court may abstain from exercising its jurisdiction "when federal adjudication would unduly intrude upon complex state administrative processes because . . . federal review would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007). There is no "formulaic test for determining when dismissal under Burford is appropriate." *First Penn–Pacific Life Ins. Co. v. Evans*, 304 F.3d 345, 348 (4th Cir. 2002). However, after weighing "the federal interests in retaining jurisdiction over the dispute and the competing concern for the independence of state action," a district court may abstain where "the State's interests are paramount and . . . a dispute would best be adjudicated in a state forum." *Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (internal quotation marks omitted)).

The federal interests in resolving Plaintiff's claims are extremely weak. As discussed *supra*, Plaintiff's federal claims run afoul of sovereign immunity and the Complaint fails to articulate a basis for standing. Plaintiff's only remaining claims are matters of state law, and exclusively concern a regulatory apparatus designed to safely and efficiently distribute cannabis. The federal government has virtually no interest in the efficacy of this regulatory scheme because the Controlled Substances Act ("CSA"), 21 U.S.C. § 801, *et seq.*, outlaws the

16

possession and distribution of marijuana. Under *Burford*, this Court must decline to MediGrow's invitation to "evaluate state law claims that are in direct conflict with the CSA." *Left Coast Ventures Inc. v. Bill's Nursery Inc.*, No. MJP-19-1297, 2019 WL 6683518, at *2 (W.D. Wash. Dec. 6, 2019). It is the Maryland courts, not the federal courts, who have an interest in ensuring that Maryland's medical cannabis licensing procedures operate in accordance with Maryland law. Accordingly, Counts IV, V, VI, VII, and VIII are DISMISSED WITHOUT PREJUDICE.

## IV. Leave to Amend is DENIED.

Plaintiff seeks leave to amend its Complaint to address the deficiencies discussed above. While Fed. R. Civ. P. 15(a) requires that leave to amend "shall be freely given when justice so requires," a district court may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). As this Court has repeatedly explained, an amendment is futile if it would not survive a motion to dismiss. *See, e.g.*, *Whitaker v. Ciena Corp.*, RDB-18-0044, 2018 WL 3608777, at *3 (D. Md. July 27, 2018) (citing *Tawaab v. Virginia Linen Service, Inc.*, 729 F. Supp. 2d 757, 770 (D. Md. 2010)). In some cases, immunity to suit may render further amendment futile. *See Usiak v. Brown,* RDB-10-2374, 2011 WL 3705349, at *6 (D. Md. Aug. 23, 2011) (rejecting amendment as futile because qualified immunity shielded defendants).

The pleading deficiencies associated with Counts I and II cannot be corrected because they are barred by sovereign immunity. Count III is dependent upon Counts I and II. Accordingly, Counts I, II, and III are DISMISSED WITH PREJUDICE. This Court's

jurisdiction over all remaining Counts are premised on the viability of the federal claims; therefore, no amendment can render those counts amenable to adjudication in federal court. Accordingly, Plaintiff's request for leave to amend is DENIED.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 21) is GRANTED. Plaintiff's Complaint is DISMISSED in its entirety. Counts I, II, and III are DISMISSED WITH PREJUDICE because Plaintiff cannot overcome the Defendants' Eleventh Amendment immunity. The remaining Counts (Counts IV, V, VI, VII, and VIII) are DISMISSED WITHOUT PREJUDICE.

A separate Order follows.

Dated: September 16, 2020

\_\_\_/s/_____
Richard D. Bennett
United States District Judge